UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **MICHAEL NIEWOLAK**<br><br>Plaintiff,<br><br><br>vs.<br><br><br>**SGT. KEATH BARTYNSKY, SGT. HEATHER HOLCOMB,** and **LT. EDWARDS,** in their individual and official capacities,<br><br>Defendants. | **2:19-CV-13386-TGB**<br><br><br><br>**ORDER GRANTING IN PART, DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br>**AND**<br>**GRANTING IN PART, DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

This matter is before the Court on Defendants Sergeant Keath Bartynski[1], Sergeant Heather Holcomb, and Lieutenant Edwards's (together "Defendant Officers"), Motion for Summary Judgment. ECF No. 30. In response, Plaintiff Michael Niewolak has cross moved for partial Summary Judgment. ECF No. 33. For the reasons stated herein,

---

[1] Although the Complaint refers to Defendant Bartynski as "Bartynsky," Defendants use the spelling "Bartynski." Defendants are in the best position to know the correct spelling of this name, so the Court will use that spelling. Plaintiff is directed to verify the correct spelling of Bartynski's name and, if necessary, to amend the Complaint to ensure that Defendant Bartynski's name is spelled correctly, no later than 10 (ten) days after the date of this Order.

1

the Court will **GRANT IN PART** and **DENY IN PART** Defendants'
motion for summary judgment. The Court will also **GRANT IN PART,**
and **DENY IN PART** Plaintiff's motion for partial summary judgment.

## I.   BACKGROUND

On December 5, 2017, Plaintiff Michael Niewolak claims that while
he was working at Great Lakes Auto in Highland Park and attempting
to close the gate of the business, Defendant Sgt. Keath Bartynski drove
up to the gate and prevented it from being closed.  Bartynski then entered
the parking lot, chased Niewolak, grabbed him, and arrested him without
probable cause. ECF No. 1, PageID.3-4. Niewolak alleges that Bartynski
accosted him, threw and tackled him to the ground twice, and then
handcuffed him in an excessively tight manner—all without probable
cause or legal justification. *Id*. He also alleges that when Defendants
Holcomb and Edwards arrived on the scene, they "participated in and/or
failed to stop" Defendant Bartynski's use of excessive force. *Id*. at
PageID.4.

Niewolak also contends that Holcomb and Edwards also "put their
hands on him and refused to loosen the handcuffs although he informed
each and every one of them that the handcuffs were too tight," resulting
in "abrasions and scratches." *Id*. Niewolak contends that all three
Defendant Officers then arrested him without any cause and transported
him to the Highland Park jail where he was incarcerated without

2

probable cause. *Id*. However, all charges against Niewolak were dropped. Accordingly, Niewolak argues that the Defendant Officers "knew that [he] had not committed any crime and knew they had no justification to arrest [him] but conspired to falsely arrest him, detain him and imprison him all the while knowing that he did not commit any crimes." *Id*. at PageID.4-5. And finally, Niewolak alleges that the Defendant Officers threatened that if he sued them, they would charge him with a felony.

Niewolak brought eight claims against Defendants.[2] He raises two Counts for violating his Fourth Amendment right against unreasonable seizure (Count I) and against excessive force (Count II) under 42 U.S.C §1983, and a *Monell* claim against Highland Park for the same constitutional violations (Count III). Plaintiff further brings state law claims of false arrest and false imprisonment,  assault and battery, intentional infliction of emotional distress, and gross negligence against the individual police officers. (Counts IV-VII). Defendants moved for judgment on the pleadings on some of Plaintiff's claims (ECF No. 6), which this Court granted in part and denied in part. ECF No. 14. Count III, the *Monell* claim, was dismissed.  Counts IV, V (the first Count V, for Ethnic Intimidation), and Count VI were also dismissed against Highland Park.  Plaintiff stipulated to the dismissal of the first Count V (Ethnic Intimidation) and Count VII (Gross Negligence) against the

---

[2] The Complaint has two "Count V's", so that although the last-listed claim is Count VII, there are actually eight claims.

individual defendants.   The remaining claims against the individual defendants are Count I (unreasonable search and seizure) and Count II (excessive force); Count IV (false arrest and false imprisonment); Count V (the second Count V, for intentional infliction of emotional distress); and Count VI (assault and battery).  Defendants now move for summary judgment on the remaining claims and Plaintiff has cross-moved for partial summary judgment against Defendant Bartynski on Count I (unreasonable search and seizure), Count II (excessive force), Count IV (false arrest and imprisonment), and Count VI (assault and battery).

## II.    LEGAL STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); *see also* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

4

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587.

According to the qualified immunity doctrine, the non-moving party also has the burden of proving that the right allegedly violated was clearly established at the time of the incident in question. *See Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009). The trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). The Court must then determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to the trier of fact or whether the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252. Ordinarily, when analyzing a motion for summary judgment, the evidence is construed in favor of the non-moving party. The Supreme Court has ruled, however, that when the parties disagree on the nature of the underlying events and there is a physical record which contradicts

the Plaintiff's version, the court should base its ruling on the record. *Scott v. Harris*, 550 U.S. 372 (2007).

## III.   DISCUSSION

### A. Qualified Immunity

Defendants assert they are entitled to qualified immunity for each federal claim brought by Plaintiff.   Qualified immunity shields law enforcement officers from civil liability unless the officers (1) violated a statutory or constitutional right and (2) the unlawfulness of their conduct was clearly established at the time. *Maben v. Thelen*, 887 F.3d 252, 269 (6th Cir. 2018). (citing *District of Columbia v. Wesby*, —— U.S. ——, 138 S. Ct. 577, 589, 199 L.Ed.2d 453 (2018)).

Qualified immunity is traditionally a two-step inquiry where courts must determine "whether the plaintiff has shown a violation of a constitutionally protected right" and whether that right is so "clearly established" that a "reasonable official would understand that what he is doing violates that right." *Kent v. Oakland Cty.*, 810 F.3d 384, 390 (6th Cir. 2016) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). To succeed on a Qualified Immunity defense, Defendants must show that both prongs are met here.

"Clearly established" means that the law is so clear at the time of the incident that every reasonable officer would understand the unlawfulness of his conduct." *Howse v. Hodous*, 953 F.3d 402, 407 (6th Cir. 2020) (citing *Wesby*, 138 S. Ct. at 589.) "That's a deferential rule. And

6

for good reason: officers often find themselves in positions where they must make split-second decisions in dangerous situations." *Id.*

In a 2021 Interlocutory Appeal Order, the Sixth Circuit reaffirmed this Court's denial of Defendant Holcomb and Edwards' move for qualified immunity in Defendants' motion for judgment on the pleadings. *Niewolak v. City of Highland Park,* Michigan, 844 F. App'x 861 (6th Cir. 2021); ECF No. 23. The Court found that Niewolak had plausibly alleged violations of clearly established constitutional rights: 1) freedom from arrest in the absence of probable cause and 2) freedom from excessively forceful or unduly tight handcuffing. *Id.* at 862-63 (citing *Courtright v. City of Battle Creek*, 839 F.3d 513, 518-20 (6th Cir. 2016). Accordingly, if it is determined there is a genuine issue of material fact regarding either claim, qualified immunity must be denied. The Court will assess whether qualified immunity applies to each claim individually.

## B. Unreasonable Search and Seizure (Count I)

Niewolak contends that because Bartynski did not have reasonable suspicion to search the premises or interrogate the owner of Great Lakes Auto, he had a right to walk away. He alleges that Defendant Officers "unlawfully and without probable cause, and all the while knowing no crime had been committed, unreasonably searched, seized and detained [him]." ECF No. 1, PageID.6. As evidence that probable cause did not exist for the arrest, he points out that all charges against him were

7

dropped. *Id*. at PageID.4-5. Finally, he claims that the officers threatened to charge him with a felony if he sued them. *Id*. at PageID.5.

The Fourth Amendment of the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." *Terry v. Ohio*, 392 U.S. 1, 8 (1968) (quoting U.S. Const. Amend. IV). A warrantless arrest, like the one at issue here, is reasonable under the Fourth Amendment if supported by "probable cause to believe that a criminal offense has been or is being committed." *Brooks v. Rothe*, 577 F.3d 701, 706 (6th Cir. 2009) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)). An officer has probable cause "only when he discovers reasonably reliable information" that an individual has committed or is committing a crime. *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). An arrest violates a person's constitutional right if there was no probable cause for the arrest. *Brooks*, 577 F.3d at 706. "There are, however, certain narrowly drawn exceptions to the probable cause requirement," such as the *Terry* stop, which allows a police officer who "possesses a reasonable and articulable suspicion that a person has been involved in criminal activity," to approach and temporarily detain a person for the purpose of investigating possible criminal behavior without probable cause. *United States v. Bentley,* 29 F.3d 1073, 1075 (6th Cir. 1994) (citing *Terry*, 392 U.S. 1); *Barrera v. City of Mount Pleasant*, 12 F.4th 617, 622 (6th Cir. 2021).

In the Sixth Circuit it is settled that a *Terry* Stop suspect does not have a Fourth Amendment right to refuse to comply with an officer's request when the request is "reasonably related in scope to the circumstances which justified the stop." *Barrera,* 12 F.4th at 622  (citing *Hiibel v. Sixth Jud. Dist. Ct. of Nevada, Humboldt Cnty.,* 542 U.S. 177, 189 (2004)).

Where an officer has a reasonable suspicion to detain a suspect and the suspect fails to comply, or refuses to provide identification, the suspect may be arrested and indicted for criminal charges. *Hiibel*, 542 U.S. at 187. Accordingly, the success of Niewolak's claim that Bartynski unlawfully arrested him without probable cause for refusing to identify himself, turns on the question of when, and whether, Bartynski had reasonable suspicion to believe that Niewolak was involved in criminal activity when he ordered him to stop and attempted to detain him.

The encounter between Niewolak and Bartynski evolved in a series of escalating contacts.  First, Bartynski entered the property, pursued Niewolak, and sought to detain and question him.  Such a stop needed to be based on reasonable suspicion.  If it was, and Niewolak refused to comply and ran, then Bartynski's use of force to subdue him was lawful and Niewolak's conduct could provide probable cause to arrest if he resisted in an officer.

However, if Bartynski lacked reasonable suspicion to order Niewolak to stop and answer questions, then he was not justified in using

force to give chase, taking hold of him, and placing him under arrest, even if Niewolak tried to walk away, and refused to produce his identification.

For the reasons explained, this Court finds that reasonable suspicion did not exist, and therefore Niewolak's arrest was not based on probable cause, and indisputably unlawful.

### a. **Reasonable suspicion did not exist to question Niewolak.**

Bartynski claims he received an uncorroborated anonymous tip that the business where Niewolak worked was illegally growing marijuana. Although Defendants are correct that in *Terry*, the Supreme Court allowed police officers to stop a suspect and investigate possible criminal activity based on an informant's tip, the Supreme Court has made clear that an anonymous tip alone without corroboration does not satisfy the "indicia of reliability" required to meet the reasonable suspicion threshold for an investigatory stop. *Alabama v. White,* 496 U.S., 327-329, *Florida v. J.L.,* 529 U.S. 266, 270 (2000); *see also Williams v. Maurer*, 9 F.4th 416, 432–33 (6th Cir. 2021).[3]

---

[3] This standard is particularly pertinent to uphold in this case, where it appears Defendant Bartynski may not have even been at the correct location about which he claims to have received the anonymous tip. According to the Investigative Report, Bartynski received an anonymous tip about a marijuana grow plant located at 137 Victor Street. However, the location of Great Lakes Auto, where Niewolak worked, is listed as 138 Manchester Street on Google. Despite this discrepancy, Plaintiff concedes that Bartynski arrived at 137 Victor Street the day of the incident.

Nor does Niewolak's conduct after the fact, give rise to reasonable suspicion. The Sixth Circuit has clearly established that "police may not detain pedestrians to obtain their identity without 'specific, objective facts establishing reasonable suspicion [of] criminal activity.'" *Hiibel* at 184 (citing *Brown v. Texas,* 443 U.S. 47, 51–52 (1979)).   Even in high crime areas, a person has the right to refuse to answer a police officer's questions or reveal his name in the absence of reasonable suspicion of criminal activity. *United States v. Beauchamp*, 659 F.3d 560 (6th Cir. 2011); *Family Serv. Ass'n ex rel. Coil v. Wells Twp*., 783 F.3d 600 (6th Cir. 2015); *Wilkerson v. City of Akron*, 906 F.3d 477 (6th Cir. 2018); *Jones v. City of Elyria*, 947 F.3d 905 (6th Cir. 2020).

In *Family Serv. Ass'n*, a police officer stopped and asked two young men sitting on the side of the road for their identification. The young men refused and walked away. The Sixth Circuit found the officer had no "reasonable suspicion" to stop them:

> Walking away from an officer without answering his questions or revealing one's name does not establish reasonable suspicion for a *Terry* stop. And an individual's late-night presence in a high-crime area by itself does not establish reasonable suspicion of anything other than the probability that the individual lives in a high-crime area. That leaves the absence of a nearby car or any open store or business that might explain the men's presence. But walking without evident purpose remains an innocent, even enjoyable, activity in this country, whether in a high-crime area or a suburban park. *Papachristou v. City of Jacksonville,* 405 U.S. 156, 163–64, 171, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). Even after considering "the whole picture," *Navarette v. California,* ——

11

U.S. ──, 134 S.Ct. 1683, 1687, 188 L.Ed.2d 680 (2014) (quoting *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)), no reasonable officer could find a basis to stop [the man], let alone probable cause to arrest him on this record. *See United States v. Johnson,* 620 F.3d 685, 692–95 (6th Cir.2010).

*Family Serv. Ass'n,* 783 F.3d at 604-05.

On the facts before the Court, Sgt. Bartynski had an anonymous tip that an illegal marijuana grow operation was going on at 137 Victor Street.  On December 5, 2017, the officer arrived at the parking lot of Great Lakes Auto at approximately 1:00 p.m. where Mr. Niewolak was working at his place of employment, just as Niewolak was closing the gate. ECF No. 33, PageID.391; ECF No.33-5.  Niewolak alleges that rather than identifying himself as an officer, Bartynski drove his vehicle up to the gate to prevent it from closing, alighted his vehicle, and hustled toward Niewolak.  The facts available to Bartynski at that moment did not provide reasonable suspicion that Niewolak was involved in criminal activity.  The officer had no legal basis to conduct a *Terry* stop of Niewolak.  Though Bartynski could reasonably have initiated a voluntary police-citizen contact to ask Plaintiff questions, nothing required Niewolak to stop and answer them.

Because these facts show that Bartynski did not have reasonable suspicion from the outset to detain Niewolak or require him to answer questions, Bartynski's continued pursuit of Niewolak when he attempted to walk away was not reasonable or justified.  Lawfully at his place of

12

employment, on private property, Niewolak had no legal obligation to comply with Bartynski's commands to stop or answer questions.

### i. Defendant Bartynski is not entitled to qualified immunity.

A review of the surveillance camera video reveals that Niewolak was at his place of employment, attempting to close the gate of the business when Bartynski abruptly drove up and butted the front of his car against the gate, preventing Niewolak from closing the gate. Video Exhibit, ECF No. 30-3. In fact, Bartynski parked so close to the gate that it appears when he got out of the car, he asked Plaintiff to open the gate so that he could walk through. When Niewolak refused, evidenced from the fact Niewolak kept his hand on the gate, Bartynski proceeded to walk over the hood of his car and enter the gate of his own accord. Upon seeing Bartynski vault over the front of his car, Niewolak turned his back to Bartynski and walked toward the building. Bartynski followed after him and although the video has no sound, he appears to be speaking to Niewolak. When this failed to stop Niewolak from walking away, Bartynski charged after him from behind and tackled Niewolak to the ground. Once Niewolak was subdued, Bartynski allowed him to get up and it appears as if Bartynski was motioning for Niewolak to stand against the wall of the building. Instead, Niewolak continued to walk off. Bartynski then chases Niewolak for a second time around the corner of the building and a second camera captures Bartynski tackling Niewolak

to the ground and a scuffle ensues. As Bartynski is holding Niewolak face-down on the pavement, but is unable to hand-cuff him or completely stop him from struggling, two black male officers arrive at the scene and assist Bartynski in effectuating an arrest—handcuffing Niewolak as he lays on his stomach with his hands on his back.

According to Niewolak's deposition testimony, he was in the process of closing the gate when Bartynski arrived and indicated he wanted to enter the property; he told him no. ECF No. 30-2, PageID.235; 13-14. Niewolak alleges that Bartynski never indicated why he was there or that he was a police officer until he had tackled him on the ground. While on the ground during the first tackle, Niewolak informed Bartynski that he was an employee at Great Lakes Auto, at which point Niewolak believes Bartynski recognized that he was in pursuit of the wrong person and allowed him to get up. As Niewolak walked away, he yelled profanity at Bartynski, which he believes incited Bartynski to pursue and tackle him again. *Id.* at PageID.237-240.

In contrast, Bartynski testified that he arrived in plain clothes in an unmarked police car and immediately jumped out and approached the gate which Niewolak had attempted to close. ECF No. 30-4, PageID.314, 316, 329-330. Bartynski and Niewolak did not know each other prior to the altercation but Bartynski claims he was identifiable as a police because he was wearing a jacket with an embroidered patch on his chest and his badge attached to his belt. *Id.* at PageID.314. He claims he

initiated his red and blue police lights when he arrived on the scene, (which the video footage does not capture), but exited the vehicle when he saw Niewolak continue to close the gate. *Id*. at PageID.324. He alleges he asked Niewolak to identify himself, and that failure to do so was an arrestable offense, but Niewolak continued to walk away. *Id*. at PageID.329-330. Bartynski then pursued Niewolak and in attempt to grab him, claims they both fell to the ground, at which point Niewolak identified himself as a mechanic at a nearby business. Once Bartynski realized Niewolak was an employee at Great Lakes Auto, he released him, but alleges Niewolak swung at him, resulting in the second tackle. *Id*. at PageID.331-32. Furthermore, Bartynski concedes that the business was on private property and he had not been invited on the property.

In considering whether Bartynski should be entitled to qualified immunity, as stated, the Court must ask whether (1) a violation of Constitutional rights took place, and (2) whether that right was "clearly established." While the right to be free from arrest without probable cause is unquestionably "clearly established," the Supreme Court has cautioned against defining a right at a high level of generality. *See Anderson v. Creighton*, 483 U.S. 635, 639 (1987). In the context of an arrest alleged to be unsupported by probable cause, the ultimate question is whether a "reasonable police officer in the same circumstances and with the same knowledge could have reasonably believed that probable

cause existed in light of well-established law." *McLeod v. Bender*, No. 2:13-CV-12878, 2015 WL 1470071, at *9 (E.D. Mich. Mar. 30, 2015) (Michelson, J.) (citing *Fowler v. Burns*, 447 F. App'x 659, 661 (6th Cir.2011)).

It is clearly established that a *Terry* stop must be based on reasonable suspicion of criminal activity. Reasonable suspicion requires more than an anonymous tip from an unsubstantiated source and cannot be established merely because a citizen fails to respond to an officer and walks away.  Niewolak had done nothing to suggest he was involved in criminal activity.  The anonymous tip Bartynski claims he received from an unsubstantiated source related to the possibility of an illegal marijuana grow operation does not suffice.  In this case, Niewolak's constitutional right not to be stopped except upon reasonable suspicion was clearly established, and there is no factual dispute that it was violated.  More troubling, the video does not support Bartynski's claim that Niewolak swung at him, resulting in the second tackle. Therefore, qualified immunity must be denied. Because this Court finds that there is no genuine issue of material fact regarding Bartynski's unlawful pursuit and eventual seizure of Niewolak, Plaintiff is entitled to summary judgment on Count I – Unreasonable Search and Seizure.

### ii. Defendants Holcomb and Edwards are entitled to summary judgment on Niewolak's unreasonable search and seizure claims.

As to the summary judgment motion of Defendant Officers Holcomb and Edwards regarding Niewolak's unreasonable search and seizure claims, this motion will be granted. Niewolak now concedes that neither Holcomb nor Edwards was present at the time of Bartynski's initial take down of Plaintiff. ECF No. 41, PageID.703. Because they neither participated in the initial seizure of Niewolak, nor were present and available to prevent the seizure of Niewolak prior to him being arrested, there is no genuine issue of fact concerning their lack of liability, and summary judgment will be granted in their favor on this Count.

## C. Excessive Force (Count II)

The right to be free from excessive force during an arrest is a clearly established right. *Neague v. Cynkar*, 258 F.3d 504, 507 (6th Cir. 2001). To assess a claim of excessive force under the Fourth Amendment, a court considers "whether the officers' actions were objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *McCaig v. Raber*, 515 F. App'x 551, 555 (6th Cir. 2013) (cleaned up). The Supreme Court in *Graham v. Connor* set out certain factors relevant to the reasonableness inquiry. These include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by

flight." *Pershell v. Cook*, 430 F. App'x 410, 415 (6th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989). If the force was objectively reasonable, Defendants are entitled to summary judgment on Plaintiff's Fourth Amendment claim.

In his complaint, Niewolak alleges that Defendant Officers used excessive force, including but not limited to, forcefully grabbing him, throwing him to the ground, and handcuffing him in an excessively tight manner, causing pain and injury in addition to multiple abrasions and scratches. ECF No. 1, PageID.4. Additionally, he alleges that Defendant Officers "ignored [his] requests to loosen the handcuffs and/or complaints that the handcuffs were too tight, and failed to loosen the handcuffs resulting in injuries to [his] wrists." ECF No. 1, PageID.8. Defendants move for summary judgment on Plaintiff's excessive force claim, first, contending that the level of force was reasonable both during the initial arrest of Plaintiff and in his subsequent hand-cuffing; and second, denying that Defendant Officers violated a duty to loosen Niewolak's handcuffs.  Plaintiff seeks partial summary judgment only against Bartynski regarding the level of force used in connection with his arrest.

### a. Defendant Bartynski is not entitled to qualified immunity with respect to Niewolak's excessive force claim during Plaintiff's arrest.

In Plaintiff's partial motion for summary judgment, Niewolak attempts to argue that Bartynski's use of *any* force was excessive, because there was no probable cause to arrest. The Sixth Circuit does not

appear to have conclusively ruled on this question, but the Second, Third, Seventh, Ninth, and Eleventh circuits have rejected this argument, explaining that "the lawfulness of an arrest is irrelevant to an excessive force analysis." *Sebright v. City of Rockford*, 585 F. App'x 905, 907 (7th Cir. 2014) (collecting cases). As Justice (then-Judge) Sotomayor explained in a 2006 case, "the reasonableness test established in *Graham* remains the applicable test for determining when excessive force has been used, including those cases where officers allegedly lack probable cause to arrest." *Jones v. Parmley*, 465 F.3d 46, 62 (2d Cir. 2006).

The Sixth Circuit also seems to have implicitly endorsed this argument, adopting the reasoning of a Third Circuit decision in which a court held that "the illegal entry into a suspect's home by officers did not automatically expose those officers to liability for any injuries that the suspect may have suffered as a result of excessive force employed during the arrest." *Est. of Sowards v. City of Trenton*, 125 F. App'x 31, 41 (6th Cir. 2005) (citing *Bodine v. Warwick*, 72 F.3d 393 (3rd Cir. 1995)). Therefore, the ordinary *Graham* reasonableness test applies. The Court will address each factor in turn.

### i.    Severity of the Crime

Bartynski alleges he received a tip from an anonymous informant that the business where Niewolak was working was unlawfully growing marijuana. Given the non-violent nature of this alleged offense, and considering that the recreational use of marijuana is legalized in

Michigan, the "severity of the crime" factor weighs against the reasonableness of the level of force that was used.

### ii.     Immediate Threat

The second factor concerns any immediate threat posed by the suspect to law enforcement or to others. Since deference is given to officers and the fact that they must make split-second decisions, an officer's use of force is more likely to be viewed as reasonable if it was motivated by a genuine or at least genuinely-perceived safety threat. For example, the force necessary to restrain a suspect is generally found to be reasonable when officers believe the suspect is reaching for a weapon. *See, e.g., Brown v. City of Grand Rapids, Michigan*, No. 16-2433, 2017 WL 4712064 (6th Cir. June 16, 2017). The force necessary to physically remove a suspect from a vehicle is also considered reasonable where the suspect poses a clear risk to the public. *See, e.g., Smith v. Ball State Univ.*, 295 F.3d 763, 766-67 (7th Cir. 2002). Force used against a non-violent, non-threatening suspect, however, is more likely to be seen as unnecessary and therefore unreasonable. *See, e.g., Carpenter v. Bowling*, 276 F. App'x 423, 427 (6th Cir. 2008) (holding that it was unreasonable for officers to body slam and knee-strike a suspect, even though she was yelling during a heated altercation, because she did not pose a serious threat). At the time Bartynski arrived on the scene, Niewolak was non-violent and non-threatening, so this factor weighs against using physical force against him.

20

### iii.    Active Resistance

The Sixth Circuit distinguishes between active and passive resistance. *See Goodwin v. City of Painesville,* 781 F.3d 314, 323 (6th Cir. 2015). "The former [active resistance] can be characterized by physical force, a show of force, or verbal hostility coupled with failure to comply with police orders. . . . The latter [passive resistance] is generally shown by the lack of physical resistance or verbal antagonism." *Jackson v. Washtenaw Cnty., 678 F. App'x* 302, 306 (6th Cir. 2017) (internal citations omitted). Active resistance requires not only a refusal to comply with orders but also "some outward manifestation" that suggests intentional disobedience or blatant resistance. *Bennett v. Young*, No. 3:16-CV-169-DJH-DW, 2018 WL 1575828, at *4 (W.D. Ky. Mar. 30, 2018) (quoting *Kent v. Oakland Cnty.*, 810 F.3d 384, 389 (6th Cir. 2016)). Importantly, ". . . noncompliance alone does not indicate active resistance; there must be something more." *Eldridge v. City of Warren*, 533 F. App'x 529, 535 (6th Cir. 2013) (holding that even though the plaintiff was noncompliant, viewing facts in light most favorable to him suggested that he did not engage in active resistance since he did not physically resist and was not verbally hostile).

Prior to the arrest, Bartynski appears to approach Niewolak from behind but Niewolak continues to walk away. At this point, Niewolak was passively resisting by failing to comply with the Bartynski's claim that he instructed Niewolak to stop. Once Bartynski tackled Niewolak to the

ground, he appears to be subdued, at which point Bartynski allowed him to stand up. Once released, Niewolak claims he believed he was free to go; however, the video appears to show Bartynski motioning for Niewolak to stand against the wall, indicating Bartynski intended to either question, detain, or arrest him.

Niewolak's choice to continue walking away at that point quickly evolves from passive to active resistance. A scuffle ensues in which Niewolak is clearly resisting, and Bartynski is attempting to subdue Niewolak. At this point Niewolak was well aware of Bartynski's identity, but he is struggling and seeming to fight back. Bartynski does not appear to use more force than necessary to control Niewolak, and once additional officers arrived on the scene, Bartynski allowed the two officers to assist him in handcuffing Niewolak. On this record, there is a genuine issue of material fact concerning whether the degree of force employed against Niewolak was unreasonable and excessive. It is a jury question as to whether the degree of force applied to subdue Niewolak while he was actively resisting was unreasonable, and whether Bartynski's conduct violated Niewolak's right to be free from excessive force. Accordingly, both cross-motions for summary judgment regarding excessive force claims against Bartynski are denied.

**b.    Defendant Officers are not entitled to qualified immunity for excessively tight handcuffing.**

The complaint first names Defendant Bartynski as being the individual who grabbed Niewolak, threw and tackled him to the ground twice and handcuffed him excessively tight. ECF No. 1, PageID.4. However, it then alleges that Holcomb and Edwards arrived "and participated in and/or failed to stop the assault on Plaintiff" "when they too put their hands on Niewolak and refused to loosen the handcuffs" despite Niewolak's pleas to loosen because they were causing pain and injury. *Id.*

Although Niewolak alleges that Bartynski "handcuff[ed] him excessively tightly without any warrant, probable cause or legal justification whatsoever," ECF No. 33, PageID.392, the video recording clearly shows that two unidentified black male officers actually applied the handcuffs to Niewolak after Bartynski subdued him.  Video Ex., ECF No. 30-3. Niewolak also alleges, however, that he told all Defendant Officers that the handcuffs were cutting off his circulation and that his hands were numb, but they did not respond to him. ECF No. 1, PageID.8; ECF No.30-2, PageID.246.

In his reply to Defendant's motion for summary judgment, Niewolak now concedes that Defendants Edwards and Holcomb were not at the scene during the initial take down but asserts that the officers had a constitutional duty to prevent Bartynski and fellow officers from using

23

excessive force when handcuffing him because they had the means and a reasonable opportunity either to prevent the forceful handcuffing, or at the very least to loosen the handcuffs. ECF No. 41, PageID.703-04. Plaintiff also makes a new argument, alleging that as direct supervisors Edwards and Holcomb had a duty to intervene and are liable for the conduct of the handcuffing officers.

Defendants Edwards and Holcomb argue that they are entitled to summary judgment because first, Edwards was not present when Niewolak was arrested. Second, Holcomb came in physical contact with Niewolak after he was already arrested, handcuffed, and sitting on the ground. ECF No. 30, PageID.194. Third, supervisor liability may not be imposed on Holcomb and Edwards based solely on their rank and Niewolak's belated accusation under this theory has no "factual foundation." ECF No. 43, PageID.972. Defendants also contend they are entitled to summary judgment because Plaintiff did not present this argument at the motion to dismiss stage, nor in its initial complaint. *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). *Shehee v. Luttrell*, 199 F.3d 295 (6th Cir. 1999)). This Court is unpersuaded and denies Defendants' motion for summary judgment for the reasons explained herein.

To establish an excessive force claim based on handcuffing, Niewolak must allege that: (1) he complained about the tightness of the handcuffs, (2) the officers ignored his complaint, and (3) the hand cuffs

caused a physical injury. *McGrew v. Duncan*, 937 F.3d 664, 668 6th Cir. 2019). "Not all allegations of tight handcuffing . . . amount to excessive force." *Lyons v. City of Xenia*, 417 F.3d 565, 575 (6th Cir. 2005). "[A] subjective feeling of pain or numbness standing alone does not constitute a physical injury." *Jackson v. Lubelan*, 657 Fed. Appx. 487, 501 (6th Cir. 2016). But "[t]he extent of the physical injury suffered by the plaintiff need not be severe in order to sustain the excessive-force claim." *Courtright*, 839 F.3d at 519 (citing *Morrison v. Bd. of Trs.*, 583 F.3d 394, 402 (6th Cir. 2009) (finding that allegations of bruising, wrist marks, and "attendant pain" suffered by the plaintiff while she was handcuffed were sufficient to proceed past summary judgment).

Sixth Circuit precedent establishes that an excessive force handcuffing claim may be alleged against officers even if those officers did not physically handcuff the plaintiff, but they heard the plaintiff's complaints and did nothing. *Baynes v. Cleland*, 799 F.3d 600, 608-09 (6th Cir. 2015) (denying qualified immunity for officer who did not place handcuffs on the plaintiff but heard the plaintiff complain that the handcuffs were too tight). Here, Niewolak has alleged that Defendant Officers heard him complain that the handcuffs were too tight and did nothing. Holcomb and Edwards both have testified they cannot recall what, if anything Niewolak said to them at the scene of the arrest. Holcomb Dep., ECF No. 41-9, PageID.798-802,; Edwards Dep., ECF No. 41-10, PageID.809.

25

Based on the above caselaw, the Court need not address the viability of Niewolak's supervisor liability argument because the role and rank of Holcomb and Edwards is not the dispositive issue in Niewolak's excessive handcuffing claim. The issue is whether the officers were told that the handcuffs were too tight, and were in a position to loosen them.

Here, Niewolak has presented sufficient facts to support a claim of excessively forceful handcuffing against Defendant Officers. Niewolak's testimony and the video create a genuine issue of fact that (1) he complained to each of the officers that the handcuffs were too tight, (2) that each of the officers ignored Niewolak's requests to loosen the handcuffs, and (3) that the officers' failure to loosen the handcuffs resulted in injuries to his wrists, including abrasions and scratches. ECF No. 1, PageID.4; *id.* at PageID.8.

The video shows two officers, identified as Edwards and Holcomb, appearing briefly at the scene after Niewolak is handcuffed. ECF No. 30-3. The officer identified as Edwards, *see* ECF No. 30-2, PageID.243, appears briefly from the corner of the building in plain clothes as Niewolak is handcuffed by two unidentified black male officers. Holcomb, dressed in uniform, then appears after Niewolak has been handcuffed and appears to walk towards Niewolak and communicate with him briefly. The substance of the conversation cannot be discerned from viewing the video, but a reasonable juror could conclude that it corroborates Niewolak's testimony that he was then complaining about

the tightness of his handcuffs. Likewise, the video shows that at various points during the arrest Edwards and Holcomb had the means and opportunity to at the very least, loosen Niewolak's handcuffs when he allegedly complained that they were too tight. Video Ex, ECF No. 30-3.

The video also clearly indicates that Bartynski played an integral role in arresting Niewolak and was close by at the time he was handcuffed, making it reasonable for a jury to find that Bartynski was also aware of Niewolak's alleged complaints that his handcuffs were too tight, and had the means and opportunity to loosen them but failed to do so.

With respect to qualified immunity, as to the "clearly established" prong, "[t]he law is clear in this Circuit regarding the prohibition against excessively forceful handcuffing." *Baynes v. Cleland*, 799 F.3d 600, 616-17 (6th Cir. 2015); *see also Kostrzewa v. City of Troy*, 247 F.3d 633, 641 (6th Cir. 2001) (the right to be free from "excessively forceful handcuffing" is clearly established for qualified immunity purposes). Accordingly, it was clearly established in 2017, the time of this incident, that Niewolak had a right to be free from excessively forceful handcuffing. *See also Courtright*, 839 F.3d at 519.

Because there is a genuine dispute of material fact as to whether Defendant Officers were notified that Niewolak's handcuffs were too tight, Defendants are not entitled to qualified immunity on Niewolak's

excessive force in handcuffing claim at the motion for summary judgment stage, and Defendants' motion is denied.

## D. False Arrest and Imprisonment against all Defendants (Count IV)

A civil plaintiff bringing a claim of false arrest has the burden to establish that (1) he was arrested by the defendant(s), (2) he was aware of his arrest, (3) the arrest was against his will, (4) the defendant(s) acted intentionally, and (5) the arrest was illegal. M Civ JI 116.20. "The elements of false imprisonment are [1] an act committed with the intention of confining another, [2] the act directly or indirectly results in such confinement, and [3] the person confined is conscious of his confinement." *Moore v. Detroit*, 252 Mich. App. 384, 387 (Mich. Ct. App. 2002).

Niewolak alleges in his Complaint that he was "unlawfully and falsely arrested as he was arrested without probable cause and transported by Defendants to police headquarters, where he was falsely imprisoned and detained for an unreasonable and unjustified time." ECF No. 1, PageID.12. In response, Defendant Officers raise the defense that as police officers acting within the scope of their duties, they are entitled to immunity from tort claims under Michigan law.

### a. Bartynski is not entitled to governmental immunity.

Because the Court has determined that neither reasonable suspicion nor probable cause existed at the time of Niewolak's arrest, the

28

arrest was unlawful, and thus constitutes a false arrest. Accordingly, Plaintiff is entitled to summary judgment on the claim of false arrest.

In *Odom v. Wayne County*, 482 Mich. 459 (2008), the Michigan Supreme Court held that the Governmental Tort Liability Act (GTLA) provided immunity from intentional tort liability, and that the proper test to be applied in determining if a governmental employee enjoys immunity from an intentional tort is found in *Ross v. Consumers Power Co.*, 420 Mich. 567 (1984). Under *Ross*, to take advantage of qualified immunity for intentional torts, a governmental employee must raise governmental immunity as an affirmative defense and must satisfy a three-part test proving:

> a) the acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority;
>
> b) the acts were undertaken in good faith, or were not undertaken with malice; and
>
> c) the acts were discretionary, as opposed to ministerial.

*Id.* at 592; *Odom*, 482 Mich. at 480. First, in this case, the Court has concluded that a reasonable officer would have known he was violating Niewolak's constitutional rights by apprehending him without reasonable suspicion and arresting him without probable cause. Second, given that Bartynski continued to pursue Niewolak after he recognized that he was an employee of Great Auto Lakes, a fact question exists as to

the intent of Bartynski's second tackling of Niewolak. In *Odom*, the Michigan Supreme Court defined lack of good faith "as malicious intent, capricious action or corrupt conduct." *Id.* (citations omitted). Furthermore, "willful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or, if not that, such indifference to whether harm will result as to be the equivalent of a willingness that it does." *Id.* (citations omitted). Good faith "is subjective in nature" and "protects a defendant's honest belief and good-faith conduct with the cloak of immunity." *Id.* at 481-82.

ere, the Court finds that a reasonable jury could conclude that Bartynski was indifferent towards the harm that could result from unlawfully tackling and arresting Niewolak. For the same reasons, the Court finds a reasonable jury could conclude that Bartynski's conduct was discretionary, as opposed to ministerial given the unlawful nature of the arrest. Therefore, the Court finds that Bartynski is not entitled to immunity at the summary judgment stage.

### b. Defendants Holcomb and Edwards are entitled to governmental immunity.

Because this Court has determined Defendants Holcomb and Edwards were not present or involved in the decision to arrest Plaintiff, or in his physical seizure, the motion for summary judgment by Defendants Holcomb and Edwards on the claim of false arrest and imprisonment is granted.

**E. Intentional Infliction of Emotional Distress (V)**

To establish a claim of intentional infliction of emotional distress, the plaintiff must show: "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Graham v Ford,* 237 Mich App 670, 674; 604 NW2d 713 (1999).

Because there is a genuine issue of material fact as to whether excessive use of force was applied, it follows that a reasonable jury could find that Niewolak did in fact suffer intentional infliction of emotional distress due to Defendant Officers' conduct. Accordingly, the Defendants' motion for summary judgment is denied.

**F. Assault and Battery (Count VI)**

Defendant Officers raise the defense that as police officers acting within the scope of their duties, they are entitled to immunity from tort claims under Michigan law. Niewolak now withdraws his claims of assault and battery against Defendants Edwards and Holcomb, so the only issue before the Court is whether Defendant Bartynski is entitled to governmental immunity for Niewolak's assault and battery claims. ECF No. 41, PageID.709.

Given that the record creates a fact question on reasonableness, and Bartynski's intent during his continued pursuit and take down of Niewolak, there is a genuine dispute as to whether Bartynski's conduct constituted an "intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another,

31

under circumstances which create a well-founded apprehension of immediate contact, coupled with the apparent present ability to accomplish the contact." *VanVorous v. Burmeister*, 262 Mich. App. 467, 483 (2004), quoting *Espinoza v. Thomas,* 189 Mich. App. 110, 119 (1991). Similarly, a reasonable jury could find evidence of battery, or a "willful and harmful offensive touching of another person which results from an act intended to cause such a contact." *Id*.   Accordingly, Defendant Bartynski's motion for summary judgment is denied.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 30) is **GRANTED IN PART,** and **DENIED IN PART**. Plaintiff's partial Motion for Summary Judgment (ECF No. 33) is also **GRANTED IN PART, and DENIED IN PART**.

As to Count I (Unreasonable Search and Seizure) against Defendants Bartynski, Edwards and Holcomb:

- Plaintiff's Motion for partial Summary Judgment, ECF No. 33, is **GRANTED** as to Defendant Bartynski only;

- Defendants' Bartynski, Edwards and Holcomb's Motion for Summary Judgment, ECF No. 30, is **DENIED** as to Bartynski and **GRANTED** as to Edwards and Holcomb;

As to Count II (Excessive Force) against Defendants Bartynski, Edwards and Holcomb:

- Plaintiff's Motion for partial Summary Judgment against Defendant Bartynski, ECF No. 33, is **DENIED**;

- Defendants Bartynski, Edwards and Holcomb's Motion for Summary Judgment, ECF No. 30, is **DENIED**.

As to Count IV (False Arrest) against Defendants Bartynski, Holcomb and Edwards:

- Plaintiff's Motion for partial Summary Judgment as to Defendant Bartynski, ECF No. 33, is **GRANTED;**

- Defendants Bartynski, Edwards and Holcomb's Motion for Summary Judgment, ECF No. 30, is **DENIED** as to Bartynski and **GRANTED** as to Edwards and Holcomb.

As to Count V (Intentional Infliction of Emotional Distress) against Defendants Bartynski, Holcomb, and Edwards:

- Defendants Bartynski, Edwards and Holcomb's Motion for Summary Judgment, ECF No. 30, is **DENIED**.

As to Count VI (Assault and Battery) against Defendants Bartynski, Holcomb and Edwards:

- Defendants Bartynski, Edwards and Holcomb's Motion for Summary Judgment, ECF No. 30, is **DENIED** as to Bartynski and **GRANTED** as to Edwards and Holcomb.

Accordingly, Judgment may be entered in favor of Plaintiff against Defendant Bartynski only on Counts I (Unreasonable Search and Seizure) and IV (False Arrest); and in favor of Defendants Edwards and

Holcomb only on Counts I (Unreasonable Search and Seizure), IV (False Arrest), and VI (Assault and Battery).

The remaining Counts to be tried to a jury are Count II (Excessive Force) against all Defendants, Count V (Intentional Infliction of Emotional Distress) against all Defendants, and Count VI (Assault and Battery) against Bartynski only.

**IT IS SO ORDERED.**

Dated: July 19, 2022        s/Terrence G. Berg
                            TERRENCE G. BERG
                            UNITED STATES DISTRICT JUDGE